[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13837

_____

D.C. Docket No. 8:12-cv-01816-EAK-TGW

ROBERT KROPILAK,
NICOLE COLLINS,

Plaintiffs-Appellants,

versus

21ST CENTURY INSURANCE COMPANY,
f.k.a. New Hampshire Indemnity Company, Inc.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 18, 2015)

Before TJOFLAT and HULL, Circuit Judges, and BARTLE,* District Judge.

BARTLE, District Judge:

_____

*Honorable Harvey Bartle III, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

This is an appeal from a judgment in favor of an insurance company on a claim against it for bad faith. The question before the Court is whether the District Court erred in withholding evidence from the jury as a result of its grant of a motion in limine and thus ruling as a matter of law that the insurer had no duty to enter into a consent judgment in excess of the policy limits.

## I.

The following facts are undisputed. On October 7, 2008, Robert Kropilak ("Kropilak") and Nicole Collins ("Collins") were involved in a vehicle collision in Pasco County, Florida, after Collins improperly made a left-hand turn in front of Kropilak's motorcycle. Kropilak, who was injured, was transported by helicopter to a hospital. Collins remained at the scene of the accident where she was cited by a responding police officer.

Collins was insured under an automobile liability insurance policy issued by 21st Century Insurance Company, f.k.a. New Hampshire Indemnity Company, Inc. ("21st Century"). Her policy had a liability limit of $10,000 per person and $20,000 per accident. On the day the crash occurred, Collins reported it to 21st Century. At the time, she did not know Kropilak's identity.

Two days after the crash, Tracy Schwager ("Schwager"), a 21st Century claims adjuster, sent a letter to Collins introducing herself and reiterating the policy limits. Schwager also made clear that Collins could be subject to liability in excess

2

of those limits and that 21st Century would not be responsible for any such excess liability. Schwager also advised in the letter that Collins had the right to retain personal counsel at her own expense.

On October 14, 2008, Schwager learned that the police report concerning the collision was ready for pickup. She communicated this to her supervisor in an email labeled "high importance," but for reasons which are not clear, 21st Century never sent a representative to pick up the police report. 21st Century, however, did obtain the report a few days later on October 20, 2008, when Kropilak's attorney mailed a copy of it to 21st Century along with a letter of representation requesting insurance information. The next day, 21st Century came into possession of an additional copy of the police report through a third-party vendor. It was from this report that 21st Century first learned Kropilak's identity.

On October 20, 2008, the hospital where Kropilak was being treated for his injuries faxed Schwager a hospital lien in the amount of $33,880. Kropilak received a copy of the lien around the same time. At a later deposition, he testified that his receipt of the lien prompted him to conclude that he would not accept an offer of Collins' policy limits to settle his claims against her.

21st Century responded to Kropilak's attorney in a letter dated November 10, 2008. It provided the insurance information requested and asked the attorney to contact Schwager if she was open to discussing the possibility of settlement.

3

Schwager thereafter learned of the extent of Kropilak's injuries from State Farm Insurance Company, through which Kropilak held uninsured motorist coverage. Unsolicited, on November 13, 2008 – 37 days after the accident – 21st Century mailed to Kropilak's attorney a check for $10,000, the amount of Collins' policy limits, in settlement of Kropilak's claim. Kropilak's attorney received the check on November 17, 2008. Kropilak refused to accept the policy limits and did not cash the check.

The next day, November 18, 2008, Kropilak filed suit against Collins in a Florida state court. Collins was served with the complaint on February 6, 2009. In a letter dated March 9, 2009, 21st Century explained to Collins that it was aware of the lawsuit and that her liability in that action could exceed her policy limits. 21st Century also retained an attorney, Jeff Worman ("Worman"), to represent Collins. On March 18, 2009, Worman advised 21st Century in writing that Kropilak's "damages well exceed [Collins'] policy limits of $10,000." A jury verdict in Kropilak's suit against Collins, Worman predicted, "could reasonably be expected to fall within [$]150,000 and $300,000."

Meanwhile, 21st Century followed up on several occasions with Kropilak's attorney to inquire about the $10,000 check mailed in November 2008. On December 11, 2008, Schwager telephoned Kropilak's attorney about the settlement offer but received no response. 21st Century again contacted Kropilak's attorney

4

on April 1, 2009.  It noted that the $10,000 check had not been cashed and asked, "[w]ill you advise your intention with the check?"

On March 5, 2010, over a year and three months after 21st Century had tendered the policy limits, Kropilak's attorney sent Worman a "settlement opportunity" letter.  The letter began:  "This correspondence will address the claims conduct issues as regarding [21st Century's] failure to settle this claim."[1] The letter went on to propose an agreement between 21st Century, Collins, and Kropilak.  The agreement, according to Kropilak's attorney, would protect Collins "from financial ruin, but preserve[] all issues regarding [21st Century's] claims conduct."  Specifically, Kropilak's lawyer offered a settlement with a consent judgment against Collins for $150,000.  The parties would then "look solely to the determination of [21st Century's] liability for the recovery of damages over the policy limits."  21st Century could defend "in the face of a known reasonable amount of harm that was done to [Collins] by a breach of the duties of good faith, if any."  Under such an agreement, the letter stated, the insurance company "could settle the personal exposure of [Collins] without hurting [21st Century's] interests. After all, we all know that a lawsuit against [21st Century] is going to be filed; it is just a matter of when and for how much."  The letter continued:

---

[1] This letter refers to AIG, not 21st Century.  It appears from the record that 21st Century was at one time a subsidiary of AIG.  21st Century does not argue that this misnomer is material.

5

> Obviously, if [21st Century] has done nothing wrong, then the interest of [21st Century] is tremendously benefitted by our proposal to a consent judgment and covenant not to execute. Specifically, [21st Century] can obtain protection of the insured, avoid litigation expenses in defending the current case and promptly move forward to defend [21st Century's] claims conduct.

The offer remained open for 30 days.

Worman advised Collins of the settlement proposal contained in the letter. He also forwarded the letter to David Zawrotny ("Zawrotny"), a 21st Century adjuster assigned to the matter. According to his deposition testimony, Zawrotny believed that the $150,000 judgment amount proposed by Kropilak's counsel was "in the reasonable range" of the value of Kropilak's lawsuit and that Kropilak's pain and suffering injury values alone were likely between $120,000 and $150,000. Worman subsequently prepared a pre-trial report for Zawrotny in which he predicted that Kropilak's lawsuit would result in a directed verdict in Kropilak's favor on "liability for the crash, causation of injury and permanency of that injury" and a potential verdict of between $150,000 and $200,000. Nonetheless, 21st Century did not accept the proposal.

Kropilak's negligence lawsuit against Collins thereafter proceeded to trial. On August 6, 2010, a jury returned a verdict in Kropilak's favor in the amount of $173,097.07. In partial satisfaction of this judgment, 21st Century paid Kropilak the $10,000 policy limits and $2,500 for property damage. This left Collins

personally liable for a balance of $160,597.07.  In a letter to Collins dated October 27, 2010, Zawrotny conveyed this information and reiterated that "[a]ny additional money required to settle this judgment will be your responsibility."

Kropilak and Collins then entered into an agreement concerning the unpaid balance of the judgment against Collins.  She assigned to Kropilak the proceeds she might receive from any action against 21st Century "arising out of, or in any way relating to, the events which [were] the subject of" Kropilak's negligence action against her.  Collins further agreed to cooperate with Kropilak in pursuing such an action.  Kropilak, for his part, agreed that he would not record, execute on, or initiate garnishment or collection proceedings in relation to the judgment against Collins.  He also stipulated that enforcement of liability created by the judgment would be stayed pending the outcome of the bad-faith claim and that the judgment against Collins would be considered satisfied at the conclusion of any bad-faith lawsuit, whatever the outcome.

Together, Kropilak and Collins then initiated the instant action in state court. They sought the amount of the underlying judgment in excess of Collins' policy limits on the ground that 21st Century had acted in bad faith toward Collins, its insured.  They articulated two theories of bad faith.  First, they asserted what is known as the Powell theory, that is that 21st Century had improperly "failed to tender its policy limits to settle the claims of [Kropilak] against [Collins] within a

7

reasonable period of time under the circumstances." See Powell v. Prudential Prop. & Cas. Ins. Co., 584 So. 2d 12 (Fla. Dist. Ct. App. 1991). Second, they maintained that 21st Century had "unreasonably refused to settle under" the terms proposed by Kropilak's counsel in the March 5, 2010 settlement opportunity letter.

21st Century removed the case to the United States District Court for the Middle District of Florida on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332. Thereafter, 21st Century filed motions seeking protective orders barring Kropilak and Collins from taking the depositions of 21st Century's corporate representative and of one of its management-level employees on the subject of plaintiffs' second theory of bad faith. That theory, as noted above, rested on 21st Century's decision not to enter into the settlement proposed by Kropilak's counsel. 21st Century argued it had no duty under Florida law to participate in such an agreement. The Magistrate Judge heard argument on the motions and subsequently ruled in favor of 21st Century.

After the Magistrate Judge granted 21st Century's motions for protective orders, the District Court denied the motion of 21st Century for summary judgment and allowed both theories of liability advanced by Kropilak and Collins to proceed. On the first day of trial, the District Court, reversing itself, granted a motion in limine filed by 21st Century and excluded any evidence concerning the March 5, 2010 settlement opportunity letter. It accepted 21st Century's argument that "the

8

proposed agreement bears no relevance on the issues, and that any potential relevance is substantially outweighed by the danger of unfair prejudice." The Court further noted that the Magistrate Judge had previously issued a protective order relating to that evidence. In accordance with the District Court's order, the jury heard evidence only on the plaintiffs' Powell theory. While the jury found that 21st Century had acted in bad faith in failing to tender the policy limits until 37 days after the collision, it also found in favor of 21st Century on its affirmative defense that there was no realistic possibility of settling Kropilak's claim within the policy limits. Accordingly, the court entered judgment in favor of 21st Century.

Kropilak and Collins have timely appealed the District Court's ruling on the motion in limine precluding their second theory of bad faith.

## II.

Kropilak and Collins argue that the judgment in 21st Century's favor must be reversed because the District Court improperly excluded evidence related to the March 2010 settlement opportunity letter. According to Kropilak and Collins, our standard of review is de novo because we are reviewing "both questions of law and a district court's application of law to the facts." See Reich v. Davis, 50 F.3d 962, 964 (11th Cir. 1995).

21st Century counters that because the appeal involves a lower court's ruling on a motion in limine, we must review that ruling for an abuse of discretion. See, e.g., Al-Amin v. Smith, 637 F.3d 1192, 1195 (11th Cir. 2011) (citing Mercado v. City of Orlando, 407 F.3d 1152, 1156 (11th Cir. 2004)).  The district court retains "wide discretion in determining the relevance of evidence produced at trial." Cabello v. Fernández-Larios, 402 F.3d 1148, 1161 (11th Cir. 2005).  Under the abuse-of-discretion standard, we may reverse a decision of the district court only if the court "applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1096 (11th Cir. 2004) (quoting Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332, 1336 (11th Cir. 2002)).

## III.

Under Florida law, an insurer has a duty to defend its insured against any claim and alleged facts within the terms of the policy and to indemnify the insured up to the limits of the policy.  See, e.g., Jones v. Fla. Ins. Guar. Ass'n, Inc., 908 So. 2d 435, 442-43 (Fla. 2008).  The Florida Supreme Court has explained that "[a]n insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business."  Boston Old

10

Colony Ins. Co. v. Gutierrez, 386 So. 2d 783, 785 (Fla. 1980).  Pursuant to this

duty,

> when the insured has surrendered to the insurer all
> control over the handling of the claim, including all
> decisions with regard to litigation and settlement, then
> the insurer must assume a duty to exercise such control
> and make such decisions in good faith and with due
> regard for the interests of the insured.  This good faith
> duty obligates the insurer to advise the insured of
> settlement opportunities, to advise as to the probable
> outcome of the litigation, to warn of the possibility of an
> excess judgment, and to advise the insured of any steps
> he might take to avoid same.  The insurer must
> investigate the facts, give fair consideration to a
> settlement offer that is not unreasonable under the facts,
> and settle, if possible, where a reasonably prudent person,
> faced with the prospect of paying the total recovery,
> would do so.

Macola v. Gov't Emps. Ins. Co., 953 So. 2d 451, 455 (Fla. 2006) (quoting Boston

Old Colony, 386 So. 2d at 785)).  Further, "[b]ecause the duty of good faith

involves diligence and care in the investigation and evaluation of the claim against

the insured, negligence is relevant to the question of good faith."  Boston Old

Colony, 386 So. 2d at 785; see also Dadeland Depot, Inc. v. St. Paul Fire & Marine

Ins. Co., 483 F.3d 1265, 1276 (11th Cir. 2007).  If the insurer on behalf of its

insured refuses in bad faith a demand to settle within the policy limits, the insurer

may be held liable for any excess judgment.  See generally Campbell v. Gov't

Emps. Ins. Co., 306 So. 2d 525 (Fla. 1974).  Whether an insurer acted "in good

faith with due regard for the interests of the insured" is generally a question for the jury. Boston Old Colony, 386 So. 2d at 785.

Kropilak and Collins do not challenge the verdict against them on the Powell theory of liability. Instead, they argue that the duty of good faith imposed upon insurers under Florida law includes a duty to enter into settlement agreements like the one proposed by Kropilak's counsel in his March 2010 letter. According to Kropilak and Collins, the District Court erred in excluding evidence of that agreement because the agreement constituted an offer to settle Kropilak's claims within the policy limits, albeit with the addition of a consent judgment in excess of policy limits and the preservation of the option of a bad-faith claim against 21st Century.

The District Court characterized the March 10, 2010 letter as proposing a "Cunningham-type" Agreement. 21st Century has called the proposal "a Cunningham Agreement." These characterizations refer to Cunningham v. Standard Guaranty Insurance Co., which concerned an insurance dispute arising out of an automobile collision. 630 So. 3d 179 (Fla. 1994). The parties in Cunningham entered into an agreement pursuant to which the injured individuals would try a bad-faith action against the at-fault driver's insurance company before trying the underlying negligence claim. Id. at 180. Under the agreement, "if no bad faith was found, the [injured parties'] claims would be settled for the policy

12

limits, and [the at-fault driver] would not be exposed to an excess judgment." Id. Florida courts have since characterized so-called "Cunningham agreements" as "the functional equivalent of" an excess judgment and observed that such agreements permit parties to "avoid the time and expense of going through a trial to obtain a final judgment." Perera v. U.S. Fid. & Guar. Co., 35 So. 3d 893, 899 (Fla. 2010) (quoting United Servs. Auto. Ass'n v. Jennings, 731 So. 2d 1258, 1260 (Fla. 1999)).

Florida law is clear that an insurer has no duty to enter into a Cunningham agreement. The Florida Supreme Court addressed this issue in Berges v. Infinity Insurance Co., which involved a third-party claimant's bad-faith claims against an insurance company. 896 So. 2d 665, 668-69 (Fla. 2004). There, the Court summarily rejected as without merit the claimant's contention that the insurer had acted in bad faith by failing to accept his proposal of a Cunningham agreement. Id. at 671 n.1.

Kropilak and Collins urge that 21st Century did have a duty to enter into the agreement proposed by Kropilak's counsel because it was not, in fact, a Cunningham agreement. It appears to be the position of Kropilak and Collins that the cases concerning Cunningham agreements are inapplicable to the matter at hand because the agreement proposed by Kropilak's counsel would have required the parties to stipulate to a consent judgment as to Kropilak's tort claim, rather than

13

to litigate any claims against the insured after trying the bad-faith claims.  Even if what Kropilak and Collins have proposed is different than a Cunningham agreement, Kropilak and Collins have failed to explain why an insurer is obligated to enter into the agreement proposed here when Florida law does not obligate insurers to enter into a Cunningham agreement.  The agreement proposed by Kropilak and Collins, with its requirement for the entry of a consent judgment in excess of the policy limits, would arguably extend the obligation of an insurer beyond what would be required in a Cunningham agreement.  In Cunningham, the insurer simply agreed to try the bad-faith action in advance of the underlying tort claim.  630 So. 2d at 180.  While an insurer has a duty to act in good faith to offer the policy limits under appropriate circumstances to avoid exposing its insured to a judgment in excess of those policy limits, it has no duty on behalf of its insured to agree to a consent judgment in excess of policy limits and then subject itself to a suit for bad faith for the amount in excess of the policy limits.

The argument of Kropilak and Collins is disingenuous to the extent it asserts that the proposed agreement was, in essence, an agreement to settle for the policy limits.  They state in their appellate brief that the proposal "offered to settle the claims against Collins within the $10,000 policy limits," and that "[t]he preservation of a bad faith claim against 21st Century for liability above policy limits does not negate the opportunity for 21st Century to have fully settled the

14

claims . . . within policy limits." 21st Century, as noted above, had promptly tendered the policy limits a mere 37 days after the accident by sending a check to Kropilak's attorney. Kropilak continually refused to cash the check and instead elected to proceed to trial against Collins and then against 21st Century. It was Kropilak, not 21st Century, who had refused to settle within the policy limits.

Kropilak and Collins rely heavily on Campbell v. Government Employees Insurance Co. in support of their appeal. See 306 So. 2d 525 (Fla. 1974). This decision is inapposite. In Campbell, the insurer, prior to the trial, had refused the settlement demand of the claimant which was within the policy limits. Id. at 526. At trial that claimant obtained a verdict against an insured in excess of the policy limits. Id. After the trial, the claimant told the insurer that he would settle the matter for the policy coverage limit plus an assignment of the insured's right of action against the insurer for failure to settle. Id. at 530. The insurer refused and was sued for bad faith. Id. at 526. The Florida Supreme Court agreed that the insurer had acted in bad faith by rejecting this proposed agreement and by failing to communicate it to the insured. Id. at 532.

Unlike the insurer in Campbell, 21st Century offered the policy limits within a few weeks after the accident and before any settlement demand was made. It is hard to fathom how any reasonable juror could find that 21st Century acted in bad faith under the circumstances presented in the record. In further contrast to this

15

action, the insurer in <u>Campbell</u> never informed the insured of the claimant's settlement offer. Furthermore, the claimant there never sought to have the insurance company enter into a consent judgment against the insured in excess of the policy limits. There is simply no support in <u>Campbell</u> for the proposition that the conduct of 21st Century constituted bad faith.

In sum, an insurer owes no duty under Florida law to enter into a so-called <u>Cunningham</u> agreement and likewise owes no duty to its insured to enter into a consent judgment in excess of the limits of its policy. The District Court was therefore correct in precluding Kropilak and Collins from introducing evidence of the March 5, 2010 settlement opportunity letter in support of their bad-faith claim. This conclusion holds true whether we apply the <u>de novo</u> standard of review advocated by Kropilak and Collins or the abuse-of-discretion standard asserted by 21st Century.

## IV.

For the foregoing reasons, we affirm the judgment of the District Court in favor of 21st Century.

**AFFIRMED.**