[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11068
Non-Argument Calendar

_____

D.C. Docket No. 2:14-cv-00575-PAM-CM

SHIRLEY KWIATKOWSKI,

Plaintiff - Appellant,

versus

ALLSTATE INSURANCE COMPANY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 30, 2017)

Before HULL, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

After an injured third party obtained an excess judgment of $1,900,000

against her, Shirley Kwiatkowski sued her car insurer, Allstate Insurance Company

("Allstate"), for bad faith in failing to settle the claim against her. The district court granted summary judgment to Allstate, concluding that no reasonable jury could find that Allstate acted in bad faith. Kwiatkowski now appeals. We affirm largely for the reasons stated by the district court.

In brief, Kwiatkowski struck Helen Clasen and two other pedestrians with her car while attempting to park at a credit union in September 2006. The accident severed Clasen's left leg below the knee cap. Following the accident, Allstate immediately attempted to settle Clasen's claim by offering the full bodily injury policy limits of $100,000. After Clasen retained attorney Raymond Racila, Allstate reiterated the previous settlement offer to Racila.

Racila responded to Allstate several months later. By letter dated April 12, 2007, Racila advised Allstate that Clasen was willing to settle her claims within the policy limits, and he asked Allstate to provide within 30 days all information required by Florida Statute § 627.4137. Section 627.4137 provides for the disclosure to a claimant of known insurance information for the insured. Racila wrote that "[a] timely, complete response to this letter is required before [Clasen] can resolve [her] claims within your insured's policy limits."

In response to counsel's letter, Allstate sent a copy of the policy and an affidavit of insurance, which reflected the coverage limits of the auto policy and advised that Allstate did not know of any other policies of insurance for the

2

accident.  On May 30, counsel replied that Allstate's response to his April 12 letter was deficient, and he rejected Allstate's offer to settle.  According to Racila, Allstate failed to provide a statement from Kwiatkowski or her insurance agent about additional insurance, as required by Fla. Stat. § 627.4137.  On June 4, Racila filed suit against Kwiatkowski on Clasen's behalf.

Eventually, a Florida state court entered a final judgment of $2,000,000 against Kwiatkowski.  After taking into account Allstate's payment of the $100,000 policy limits, the state court entered an amended final judgment of $1,900,000.  Kwiatkowski then sued Allstate in state court for bad faith in failing to settle Clasen's claim.  Allstate removed the action to federal court.  Following discovery, the district court entered summary judgment in favor of Allstate, and Kwiatkowski now appeals.

We review *de novo* a district court's grant of summary judgment, applying the same legal standards that governed the district court.  *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 608 (11th Cir. 2014).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Florida common law has long recognized that insurers must exercise good faith in handling claims against their insureds.  *State Farm Mut. Auto Ins. Co. v. Laforet*, 658 So. 2d 55, 58 (Fla. 1995).  Generally, if an insurer is found to have

acted in bad faith, it is liable for the entire judgment against the insured in favor of the injured third party, including any amount in excess of the policy limits. *Id.* To prevail in a bad-faith action, a plaintiff must show "a causal connection between the damages claimed and the insurer's bad faith." *Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893, 903–04 (Fla. 2010).

"The standard of care that an insurer must exercise in handling claims against its insured is the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." *Mesa v. Clarendon Nat'l Ins. Co.*, 799 F.3d 1353, 1359 (11th Cir. 2015) (internal quotation marks omitted). The insurer's good-faith duty includes the obligations "to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same." *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980). The insurer also must "investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Id.*

"Because the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith." *Id.* But "a cause of action based solely on

4

negligence which does not rise to the level of bad faith does not lie." *DeLaune v. Liberty Mut. Ins. Co.*, 314 So. 2d 601, 602–03 (Fla. Dist. Ct. App. 1975).

Whether an insurer acted in good faith is generally a question for the jury. *Kropilak v. 21st Cent. Ins. Co.*, 806 F.3d 1062, 1068 (11th Cir. 2015). Courts may decide the issue as a matter of law, however, when material facts are not in dispute. *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 680 (Fla. 2004).

Here, we agree with the district court that no reasonable jury could find that Allstate acted in bad faith in failing to settle Clasen's claim against Kwiatkowski. Allstate offered the full $100,000 policy limits to settle the case on the first business day following the accident. Soon after, Allstate advised Kwiatkowski about the possibility of an excess judgment. Later, after learning that Clasen had retained Racila as counsel, Allstate contacted Racila and re-sent the previous settlement offer and a check in that amount. Once Racila responded several months later, Allstate timely provided Racila with information it believed satisfied Fla. Stat. § 627.4137. But, without providing notice to Allstate that he believed its response deficient, Racila rejected Allstate's settlement offer and filed suit.

While Allstate's response to Racila was deficient in that it did not include a statement by Kwiatkowski or her insurance agent about additional insurance— information Allstate had in its possession at the time—no reasonable jury could conclude that this omission was anything other than simple negligence that does

5

not rise to the level of bad faith. *See DeLaune*, 314 So.2d at 602–03. Thus, although we agree with Kwiatkowski that the April 12 letter provided Allstate a reasonable opportunity to settle, we disagree that a reasonable jury could find bad faith based on Allstate's failure to provide an insurance disclosure from Kwiatkowski or her insurance agent. The evidence shows that, on the whole, Allstate's efforts to settle were prompt, consistent, and reasonably diligent.

As for Kwiatkowski's contention that Allstate failed to inform her about settlement opportunities, we agree with the district court that Racila's April 12 letter was not an "offer," even if it provided a reasonable opportunity for settlement. The letter did not state settlement terms that Allstate could have accepted with a response, no matter how complete. Nor is there a basis to conclude, even assuming Allstate should have informed Kwiatkowski of Racila's letter, that Allstate's failure in this regard affected the possible settlement. *See Perera*, 35 So.3d at 901 ("[T]he claimed damages must be caused by the bad faith."). Kwiatkowski suggests that, if she had been informed of the letter, she "would have reminded Allstate that her insurance disclosure" was in Allstate's claims file, but there is nothing to suggest that Allstate was not aware that it had the disclosure in its possession. And even if she had reminded Allstate of that information, it would not change the character of Allstate's omission from an act of negligence that does not rise to the level of bad faith.

6

Kwiatkowski's reliance on Allstate's actions after Clasen rejected Allstate's settlement offer is also misplaced. Allstate's alleged failure to investigate her car's supposed brake failure is not relevant to the question of whether Allstate acted in bad faith in failing to settle the claim against her. Kwiatkowski's complaint alleged bad faith only with respect to the failure to settle, not the failure to defend the lawsuit in good faith. Whether or not Allstate acted with reasonable care and diligence in investigating the brake defense was not causally related to the preceding failure to settle. *See Perera*, 35 So.3d at 903–04.

Finally, Allstate's rejection of Clasen's proposed *Cunningham* agreement[1] cannot establish bad faith as a matter of law. *Kropilak*, 806 F.3d at 1068. We have held that "Florida law is clear that an insurer has no duty to enter into a *Cunningham* agreement." *Id.* (citing *Berges*, 896 So.2d at 671 n.1).

In sum, and for the reasons stated, the district court's grant of summary judgment was proper as no reasonable jury could find that Allstate had failed to settle in bad faith.

**AFFIRMED**.

---

[1] In the normal course, an excess judgment against the insured is a prerequisite for a bad-faith action against an insurer. However, so-called *Cunningham* agreements permit an insurer and a third-party claimant to skip the underlying negligence suit and proceed directly to the question of bad faith. *See Perera*, 35 So. 3d at 899. In such an agreement, the parties stipulate that, if no bad faith is found, the injured third-party will settle for the policy limits, thereby "protecting the insured from exposure to an excess judgment." *Id.*