[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12334

Non-Argument Calendar

_____

VIOLA BRYANT,
as Personal Representative of the Estate
of Gregory Vaughn Hill, Jr.,

                                        Plaintiff-Appellant,

*versus*

SHERIFF, SAINT LUCIE COUNTY, FLORIDA,
CHRISTOPHER NEWMAN,
an individual,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:16-cv-14072-AMC

_____

Before ROSENBAUM, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

On January 14, 2014, Gregory Hill, Jr., was shot and killed in his home garage by St. Lucie County Sheriff's Office Deputy Christopher Newman. Viola Bryant, Hill's mother, brought a lawsuit on his behalf under 42 U.S.C. § 1983 against Deputy Newman and St. Lucie County Sheriff Ken Mascara in his official capacity. A federal jury in 2018 returned a verdict in favor of the defendants. Bryant appealed, and we reversed and remanded for a new trial. After a second trial, a jury again returned a verdict in the defendants' favor. Bryant moved for a new trial, raising evidentiary and other objections to the conduct of the trial. The district court denied that motion, and this appeal followed. After careful review, we affirm.

**I.**

On the afternoon of January 14, 2014, Deputies Newman and Edward Lopez arrived to investigate a noise complaint about Hill's residence, which was near an elementary school. Newman knocked on the front door of the house, while Lopez knocked on the garage door. Hill responded at the garage door, opening the

door partway before pushing it back down.  As the door closed, Newman fired four shots through the garage door, killing Hill.

The principal factual dispute at trial was whether Hill had a gun in his hand when he opened the garage door.  Both deputies testified that they saw Hill with a gun in his right hand by his side as he opened the garage door with his left hand. The deputies testified that Hill refused orders to drop the gun, and instead raised it in Lopez's direction as he started to bring the garage door down. Newman testified that, in response, he fired four shots through the garage door in quick succession.  An unloaded gun was found in Hill's right back pocket.

Hill's daughter, Destiny, also testified.  Destiny's elementary school was located directly across the street from Hill's home.  At the time of the shooting, Destiny was sitting on a bench in front of the school waiting to be picked up by her uncle.  She had a clear view of the house.  She said that when the police came she saw Hill, who was sitting in a chair inside the garage, stand up and close the garage.  She said Hill was not holding anything in his hands when he closed the garage door.

In addition, the parties presented expert testimony on various aspects of the case, including whether it was possible for Hill to have placed the gun in his back pocket before becoming incapacitated from his gunshot injuries.

## II.

In January 2016, Bryant, acting as representative of Hill's estate, filed a complaint in state court against Deputy Newman and

Sheriff Mascara.  The complaint alleged violations of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, as well as two state-law claims for negligence and a state-law claim for battery.  The defendants removed the case to federal district court in the Southern District of Florida.

Following a six-day trial in May 2018, the jury determined that Newman did not violate Hill's right to be free from excessive force.  The jury also determined that Sheriff Mascara's negligence was a legal cause of Hill's injuries, but that Hill was 99% responsible for his injuries.  The jury awarded one dollar in damages for funeral expenses and one dollar in damages to each of Hill's three minor children.  Bryant filed a motion for a new trial, which the district court denied.

On appeal, we reversed and remanded for a new trial based on the district court's admission of evidence of Hill's probationary status at the time of the shooting.  *Bryant v. Mascara*, 800 F. App'x 881, 885 (11th Cir. 2020).  We held that Hill's probationary status was not relevant to the "two central factual disputes at trial," which were whether "Hill had a gun in his hand at the time he opened his garage door and whether it was possible for Hill to place the gun in his back pocket before he was shot." *Id*. at 886.  Because Hill's "probationary status did not lend credibility to the deputies' claims about his behavior prior to the shooting," we found that the evidence was not relevant to any issue other than Hill's character. *Id*. at 887.  We also reasoned that the error was sufficiently prejudicial to warrant reversal and remand for a new trial. *Id*.

A second jury trial was held over eight days in July 2022. The jury determined that Deputy Newman did not use excessive force and that Sheriff Mascara was not liable for negligence. So the court entered final judgment in favor of the defendants.

Bryant then filed a motion for a new trial, raising many of the same arguments she presents on appeal. The district court denied the motion, and this appeal followed.

## III.

The bulk of Bryant's briefing is devoted to alleged evidentiary and other trial errors, for which she seeks a new trial. She also contends that the verdict was against the great weight of the evidence, and that the district court abused its discretion in denying her post-remand motion to change venue.

We review the district court's denial of a motion for new trial for an abuse of discretion. *Lambert v. Fulton County*, 253 F.3d 588, 595 (11th Cir. 2001). Likewise, we review the district court's evidentiary rulings for an abuse of discretion. *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1316 (11th Cir. 2011). In evaluating whether specific trial errors warrant a new trial, we apply the harmless-error standard of Rule 61, Fed. R. Civ. P. *Knight through Kerr v. Miami-Dade County*, 856 F.3d 795, 807 (11th Cir. 2017). Under that standard, evidentiary or other trial errors warrant a new trial "only where the error has caused substantial prejudice to the affected party (or, stated somewhat differently, affected the party's "substantial rights" or resulted in "substantial injustice")." *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004).

Finally, we review the denial of a motion for change of venue for an abuse of discretion. *United States v. Campa*, 459 F.3d 1121, 1143 (11th Cir. 2006) (*en banc*).

## IV.

Starting with the alleged trial errors, Bryant contends that the district court abused its discretion at trial in these seven ways: (1) permitting Deputy Newman to materially change his testimony between the two trials; (2) permitting Newman to testify about his finances; (3) permitting the lead investigator to openly display bias for the defendants; (4) failing to exclude cumulative expert testimony regarding DNA analysis; (5) permitting evidence of Hill playing poker and having a verbal disagreement seven hours before the shooting; (6) denying redirect examination of Deputy Lopez; and (7) permitting the medical examiner to insinuate that Hill had a drinking problem. She also maintains that (8) the cumulative effect of these errors deprived her of a fair trial.

### A. Newman's Changed Testimony

Bryant first contends that Deputy Newman "materially changed his previous testimony" from the 2018 trial, resulting in substantial prejudice to her case. In particular, she asserts that, during the 2022 trial, Newman altered his testimony with respect to (1) how Hill was standing when he opened the garage door; (2) Hill's actions upon opening the door; and (3) the timing of the shots Newman fired.

The district court did not abuse its discretion by denying a new trial in relation to this testimony. First, as the court explained,

Newman's 2022 trial testimony that Hill was in a "bladed stance" when he opened the garage door—with his left foot in front of his right foot—is not inconsistent with his 2018 trial testimony, which described Hill opening the garage door with his left hand and holding a gun in his right hand and "hunching to the side." The court reasonably concluded that Newman's new use of the term "bladed stance" was not a material change in his testimony.

Second, Newman did not testify that Hill opened the garage door with "guns blazing," as Bryant suggests. Rather, Newman was explaining that he was trained not to park in front of doorways, even though "it was a loud music call, so [he] wasn't expecting somebody to come out guns blazing at me or anything like that." Aside from that general comment, Newman did not otherwise suggest that Hill had multiple guns or had discharged a gun. Plus, as the court noted, Bryant did not object to the "guns blazing" comment, and she was able to cross-examine Newman on the issue insofar as the comment could be construed to apply to Hill.

Third, the record does not support Bryant's claim that Newman, at the 2022 trial, "slowed down the cadence of the shots" to help explain how Hill could have placed the gun in his back pocket before being incapacitated by the gunshots. At the 2018 trial, Newman testified that he fired four shots in quick succession—agreeing with plaintiff's counsel that the shots were "fractions of a second apart"—"but there was more of a gap between the first and the second than the third and fourth." Likewise, at the 2022 trial, Newman testified that there was "more of a pause . . . between one and

two than any of the other shots." Bryant fails to identify any significant or material difference with regard to the timing of the shots Newman fired or the length of any pause. And Bryant had the opportunity to question Newman about the cadence of the shots on cross examination.

On the whole, the district court reasonably concluded that Newman's supposedly changed testimony was not material or prejudicial enough to warrant a new trial. Newman's 2022 trial testimony was not clearly inconsistent with his 2018 trial testimony, and, as the court observed, Bryant "had ample opportunity to question Newman about such inconsistencies on cross examination."[1]

## B. Newman's Testimony About Finances

Staying with Newman's testimony, Bryant takes issue with his isolated comments about his financial status. In responding to a question about how he recognized the Kel-Tec gun Hill was allegedly carrying, Newman explained that, not long before the incident with Hill, he had looked online at potential backup service weapons, including Kel-Tec guns, which were "less in price," since he "didn't make much money" and "didn't want to spend two paychecks on purchasing a handgun."

---

[1] In her reply brief, Bryant challenges the district court's refusal to permit her to read portions of Newman's testimony from the 2018 trial as part of a rebuttal case. But the court denied the request in part because she had ample time to delve into those matters on cross-examination. Bryant has not shown that the district court abused its discretion in this regard.

We agree with Bryant that the comments were improper. Evidence of a party's wealth or financial status is generally inadmissible unless relevant to an issue in dispute. *See United States v. Bradley*, 644 F.3d 1213, 1271 (11th Cir. 2011) (stating that "evidence of wealth or extravagant spending may be admissible when relevant to issues in the case"). That Newman "didn't make much money" was not relevant to any issue in the case.

Even so, the district court reasonably concluded that these passing, isolated comments, unsolicited by defense counsel and offered to explain Newman's familiarity with the gun at issue, were harmless in the context of the eight-day trial. We see no abuse of the court's discretion.

## C. Bias of Lead Investigator

Bryant next suggests that Sergeant Edgar LaBeau—the lead investigator of the shooting for the sheriff's office—"demonstrated bias repeatedly" in favor of the defendants at the 2022 trial and "openly admitted confirmation bias." She claims that this bias was not disclosed during the 2018 trial, and would, if known, "have disqualified his testimony prior to trial."

Bryant fails to identify any legal grounds for excluding LaBeau's testimony. During the 2022 trial, LaBeau testified that he would "defer" to Deputies Lopez and Newman with respect to what they said they saw during the incident. He later explained that such deference was based on their statements and information "learned through the investigation." To the extent these comments demonstrate bias in favor of the defendants, Bryant, as the

district court observed, had "ample opportunity to question Sergeant LeBeau on cross-examination about any bias [he] may have had," which was the "proper remedy for any witness bias, not wholesale exclusion." Nothing prevented Bryant from challenging the thoroughness or integrity of LaBeau's investigation into the shooting. The court did not abuse its discretion by denying a new trial on this ground.

## D. Cumulative Expert Testimony

Bryant next contends that the district court abused its discretion by failing to exclude, under Federal Rule of Evidence 403, testimony from multiple expert witnesses regarding DNA evidence.

"[D]ecisions to allow expert witnesses are committed to the sound discretion of district judges." *Rubinstein v. Yehuda*, 38 F.4th 982, 997 (11th Cir. 2022). Because of the powerful and potentially misleading effect of expert evidence, expert opinions that otherwise meet the admissibility requirements may still be excluded under Rule 403. *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) (*en banc*). "Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury, or if the expert testimony is cumulative or needlessly time consuming." *Id.* (citations omitted).

The relevant background is this. In 2014, during the investigation into the shooting, the Indian River Crime Lab ("Crime Lab") issued a report that determined that Hill could not be excluded as a potential match for the DNA found on the Kel-Tec

handgun in Hill's back pocket.  At the 2022 trial, the defense called Earl Ritzline, who worked at the Crime Lab in 2014, to testify about the Crime Lab report.  For her part, Bryant retained an expert, Suzanna Ryan, who conducted independent DNA testing in 2021 and cast doubt on the results of the Crime Lab report.  As a rebuttal expert witness to Ryan, the defendants called Meghan Clement, who testified about differences between Ryan's report and the Crime Lab report and stated that she agreed with the conclusions of the Crime Lab report.  The district court permitted Clement's testimony, over Bryant's objection, because it found that her testimony was not cumulative or duplicative of Ritzline's.

The district court did not abuse its discretion.  As the court observed in its order denying Bryant's motion for new trial, the bulk of Clement's testimony "pertained to explaining the differences between Ms. Ryan's Report and the 2014 Indian River Crime Laboratory Report, in particular the methods and results of both reports, and Mr. Ritzline did not testify at all regarding these topics."  Despite some overlap between the testimony, the court reasonably concluded that the probative value of Clement's testimony was not substantially outweighed by unfair prejudice and was not needlessly cumulative.  *See* Fed. R. Evid. 403; *Frazier*, 387 F.3d at 1263.

On appeal, Bryant also challenges the admission of testimony from another expert, William Allan.  The defendants represent, and Bryant does not dispute, that Allan was retained to rebut testimony by another of Bryant's experts, Christopher Robinson,

on the issue of whether DNA evidence could show that Hill had handled the gun.  But while Bryant's pretrial motion in limine sought exclusion of testimony from both Allan and Clements, the district court denied that motion without prejudice to being renewed at trial, and Bryant neither objected to Allan's testimony at trial nor sought a new trial based on that testimony.  Because Bryant did not properly raise this issue before the district court, we review for plain error, at most.  *See Ledford v. Peeples*, 657 F.3d 1222, 1258 (11th Cir. 2011) ("[E]xcept when we invoke the 'plain error doctrine,' which rarely applies in civil cases, we do not consider arguments raised for the first time on appeal.").  And we see no indication that there is an "exceptional circumstance" to warrant relief under the plain-error standard.  *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1351 n.22 (11th Cir. 2017).

*E.  Evidence of Gambling and Altercation*

Bryant maintains that the district court erred by permitting evidence that Hill was involved in an altercation while playing poker on the morning of the shooting.  The testimony came from Andrew Brown, Hill's cousin and friend, who was with Hill for most of the day before the shooting and described his observations of Hill's conduct that day on cross-examination by defense counsel.

The district court denied Bryant's pretrial motion to exclude such evidence, reasoning that evidence of the altercation with the other poker player went directly to Hill's state of mind when the shooting took place and thus was probative on the issue as to whether Hill was holding a gun when he opened the garage door.

Still, the court cautioned the defendants not to "emphasize gambling or otherwise impute any wrongdoing toward Mr. Hill on account of gambling."

"The district court retains wide discretion in determining the relevance of evidence produced at trial." *Kropilak v. 21st Century Ins. Co.*, 806 F.3d 1062, 1067 (11th Cir. 2015).  Relevant evidence has a "tendency to make a fact" that is of consequence in determining the action "more or less probable than it would be without the evidence." Fed. R. Evid. 401.  The court may exclude relevant evidence if its probative value is "substantially outweighed" by unfair prejudice or confusion of the issues, among other concerns.  Fed. R. Evid. 403.  Because "the district court is uniquely situated to make nuanced judgments on questions that require the careful balancing of fact-specific concepts like probativeness and prejudice, . . . we are loathe to disturb the sound exercise of its discretion in these areas." *United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013) (quotation marks omitted).

Here, the district court did not abuse its discretion by permitting testimony about Hill's conduct earlier in the day before the shooting.  As we previously noted, "[t]he two central factual disputes at trial were whether Mr. Hill had a gun in his hand at the time he opened his garage door and whether it was possible for Hill to place the gun in his back pocket before he was shot." *Bryant*, 800 F. App'x at 886.

Bryant maintains that the evidence had no relevance to these disputed matters because none of these facts about Hill's conduct

earlier in the day were known to Deputies Lopez or Newman. But as we recognized in Bryant's prior appeal, evidence unknown to the officers may be relevant if it "lend[s] credibility to the deputies' claims about [Hill's] behavior prior to the shooting." *Id.* at 886–87; *see Est. of Escobedo v. Martin*, 702 F.3d 388, 400 (7th Cir. 2012) ("[E]vidence unknown to officers at the time force was used is also admissible to add credibility to an officer's claim that a suspect acted in the manner described by the officer."); *Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 948–49 (9th Cir. 2009) ("In a case . . .where what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible.").

And here, evidence as to Hill's conduct and activities on the day of the shooting, in particular that he had argued and become highly intoxicated, was probative of disputed matters, including his state of mind at the time he encountered the officers, the likelihood that he had a gun in his hand when responding to the garage door, and his compliance with officer commands. This evidence lent credibility to the deputies' claims about Hill's behavior just before the shooting. *See Turner v. White*, 980 F.2d 1180, 1183 (8th Cir. 1992) (affirming the admission of evidence of the plaintiff's alcohol consumption in an excessive force case because it was relevant to the "circumstances of the situation that confronted [the officer]").

While evidence of gambling was not directly relevant to those same matters, it was part of the narrative of Hill's conduct leading up to the shooting. Accordingly, it was reasonable for the

court to permit mention of gambling, in part to give context for the altercation and Hill's intoxication, while at the same time directing the defense not to emphasize gambling or to use it against Hill. *Cf. Old Chief v. United States*, 519 U.S. 172, 189 (1997) (explaining that courts should seek to preserve "the natural sequence of narrative evidence"); *Troya,* 733 F.3d at 1131 (permitting admission of "intrinsic evidence" in a criminal case where it "forms an integral and natural part of an account"). While Bryant claims that the defendants violated the court's conditions, she does not cite any supporting record evidence, and the district court rejected that assertion in denying her motion for a new trial.

## F. Redirect of Deputy Lopez

Bryant claims that the district court improperly limited the scope of her examination of Deputy Lopez. We disagree. Trial judges retain "wide latitude to impose reasonable limits" on witness examination based on concerns about confusion of the issues or repetitive interrogation, among other things. *United States v. Clotaire*, 963 F.3d 1288, 1296 (11th Cir. 2020); *see* Fed. R. Evid. 611(a) (stating that "[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence" so as to "avoid wasting time," among other things).

Here, the district court did not abuse its wide discretion to control the examination of witnesses. The court denied Bryant's counsel the opportunity to ask "one question" following re-cross examination of Deputy Lopez. In other words, Bryant had ample opportunity to effectively examine the witness during her case-in-

chief and on redirect. The court simply denied a second redirect, apparently to rehash matters already covered. Accordingly, the court did not abuse its wide discretion in these matters.

## G. *Medical Examiner Testimony*

Bryant takes issue with defense counsel's questioning of the medical examiner who performed the autopsy of Hill, contending that counsel sought to portray Hill unfairly as a "bad man with a drinking problem."

At the 2022 trial, the medical examiner testified that Hill's blood-alcohol content was tested after the shooting and determined to be well above .3, which indicates severe intoxication. Defense counsel asked if the examiner saw any signs of chronic alcohol use, such as cirrhosis. She said no and explained that, depending on the person, cirrhosis can take decades to develop. Defense counsel then asked, "So the fact that you did not observe any signs of that disease process does not mean that Mr. Hill was not a person with a serious or significant drinking problem?" The examiner replied, "That's correct." Bryant did not object to this line of questioning.

Earlier in the trial, Bryant's counsel had asked her own expert witness whether the toxicology or autopsy reports "reveal[ed] any evidence of cirrhosis or alcohol related deterioration internally?" Counsel also questioned the expert about other potential causes of death, such as "any type of fatal or terminal condition," such as cancer. The expert responded that he did not see any evidence of those conditions.

The district court reasoned that, by soliciting testimony from her expert that Hill had not developed cirrhosis, Bryant "opened the door to defense counsel rebutting that testimony by questioning the medical examiner as to how long cirrhosis of the liver takes to develop."

This Circuit recognizes the doctrine of "curative admissibility," or "opening the door," which allows "the opposing party to offer otherwise inadmissible evidence" to rebut unfair prejudice created "when a party offers inadmissible evidence." *Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc.*, 389 F.3d 1339, 1349 (11th Cir. 2004). Any inadmissible evidence offered in rebuttal must "correspond to the unfair prejudice created," and must be weighed by the trial court under Rule 403. *Id.*

Here, the district court did not abuse its discretion by denying a new trial on this issue. Although Bryant has established error, she has not shown that the error resulted in substantial prejudice.

For starters, we agree with Bryant that defense counsel exceeded the scope of permissible rebuttal. While the district court reasonably permitted limited inquiry as to the development of cirrhosis in rebuttal of expert testimony solicited by Bryant's counsel, defense counsel went further, suggesting the possibility that Hill had a "serious or significant drinking problem." But Hill's history of alcohol abuse, or alcohol-related disease process, was not relevant to any issue before the jury except his cause of death. Those matters are not probative of the essential facts in dispute, which were whether Hill "had a gun in his hand at the time he opened his

garage door and whether it was possible for Hill to place the gun in his back pocket before he was shot." *Bryant*, 800 F. App'x at 886. Rather, defense counsel's question could be construed to suggest an inadmissible character purpose that did not "correspond to the unfair prejudice created" by testimony that Hill had not developed cirrhosis. *See Bearint*, 389 F.3d at 1349.

But Bryant did not object at the time, and she has not established that defense counsel's question to the medical examiner had such a substantial influence on the case as to warrant a new trial. Bryant does not dispute that Hill's intoxication on the day in question was relevant to issues in dispute. And clear and largely undisputed evidence showed that Hill was highly intoxicated at the time of the shooting. In addition, Bryant makes no claim that defense counsel otherwise focused on Hill's history of alcohol abuse. *See Peat*, 378 F.3d at 1162 ("We also consider whether counsel intentionally elicited the evidence, whether counsel focused on the evidence during the trial, and whether any cautionary or limiting instructions were given."). Viewing the remark in the context of the trial as a whole, we do not believe the single, isolated comment by defense counsel, though improper, was "of a nature to impair calm and dispassionate consideration by the jury." *Knight*, 856 F.3d at 817.

## H. Cumulative Error

Even if no individual error on its own warrants a new trial, the cumulative-error doctrine recognizes that "an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal

and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (quotation marks omitted). But here, we cannot say that the two errors Bryant has established—Newman's improper comment about his finances and defense counsel's suggestion that Hill had a serious drinking problem—together yielded a denial of Bryant's right to a fair trial. *See McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 552 (1984) ("A litigant is entitled to a fair trial but not a perfect one, for there are no perfect trials.") (cleaned up).

## V.

In addition to granting relief based on trial errors, "[a] trial judge may grant a motion for a new trial if [s]he believes the verdict rendered by the jury to be contrary to the great weight of the evidence." *Watts v. Great Atl. & Pac. Tea Co., Inc.*, 842 F.2d 307, 310–31 (11th Cir. 1988). "Because it is critical that a judge does not merely substitute [her] judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001).

Here, the district court did not abuse its discretion by denying a new trial based on the weight of the evidence. In the prior appeal from the 2018 trial, based on substantially similar testimony and evidence, we stated that we "cannot say the jury delivered a verdict against the great weight of the evidence." *Bryant*, 800 F.

App'x at 888.  As we noted, "[o]nly three witnesses testified to having seen the shooting of Mr. Hill," and the two deputies testified consistently that they saw a gun in Hill's hand when he encountered the officers at the garage door.  *Id.*

While the parties presented additional expert testimony at the 2022 trial, the record does not support Bryant's claim that the medical experts essentially agreed that it was impossible for Hill to put the gun in his back pocket after being shot.  Rather, as the district court explained, "both medical experts testified that Mr. Hill would have been able to place the gun in his back pocket prior to being shot in the head."  Particularly in light of the judge's "firsthand experience of the witnesses, their demeanor, and the context of the trial," *Rabun v. Kimberly-Clark Corp.*, 678 F.2d 1053, 1060 (11th Cir. 1982), the district court did not abuse its discretion in concluding that the jury verdict was not contrary to the great weight of the evidence, *see Lipphardt*, 267 F.3d at 1186.

## VI.

Finally, Bryant contends that the district court abused its discretion by denying her motion to change venue.  Motions to transfer a civil case are governed by 28 U.S.C. § 1404, which permits the court to transfer any civil action "to any other district or division where it might have been brought or to any district or division to which all parties have consented" if such transfer is "in the interest of justice."  28 U.S.C. § 1404(a).  Factors relevant to that inquiry include the convenience of parties and witnesses, the "locus of operative facts," and other concerns related to "trial efficiency and the

23-12334              Opinion of the Court                    21

interests of justice, based on the totality of the circumstances." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

Here, the district court did not abuse its discretion by denying a change in venue. Bryant's concerns on appeal do not relate to party or witness convenience, the location of the underlying events, or the court's ability to administer the trial more generally. Rather, her sole contention is that the jury pool may have been prejudiced against her due to connections with, or potential fear of, the St. Lucie County Sheriff's Office. But as the court noted, the jury was drawn not only from St. Lucie County, but also four other counties. And the transcript for the 2022 trial does not reveal that any jurors who were seated had connections to the St. Lucie County Sheriff's Office.[2] Bryant has not shown that the district court abused its discretion by denying a change in venue after remand from the first trial.

## VII.

In sum, Bryant has not established that the district court reversibly erred or that she is otherwise entitled to a new trial on her

---

[2] Bryant asserts that "[t]wenty of the forty-two jurors on the panel had worked in law enforcement or had close family members who were in law enforcement," and that "[a] majority of these worked with or for the St. Lucie County Sheriff's Office or the neighboring police force of Fort Pierce police department." Bryant fails to support those claims with citations to the record. But in any case, even assuming they are true, they do not contradict the district court's finding that no juror *who was seated and rendered a verdict* had connections to the St. Lucie County Sheriff's Office.

22                       Opinion of the Court                    23-12334

claims against Deputy Newman and Sheriff Mascara.  We therefore affirm the judgment in favor of the defendants.

**AFFIRMED.**