630 So.2d 179 (1994)
Kenneth Dale CUNNINGHAM and Teresa Marie Cunningham, Petitioners,
v.
STANDARD GUARANTY INSURANCE COMPANY, Respondent.
No. 81056.
Supreme Court of Florida.
January 6, 1994.
Louis K. Rosenbloum, Lefferts L. Mabie, Jr. and James A. Hightower of Levin, Middlebrooks, *180 Mabie, Thomas, Mayes & Mitchell, P.A., Pensacola, for petitioners.
David H. Burns of the Law Offices of David H. Burns, and Michael D. West and Joseph E. Brooks of Huey, Guilday, Kuersteiner & Tucker, P.A., Tallahassee, for respondent.
GRIMES, Justice.
We review Standard Guaranty Insurance Co. v. Cunningham, 610 So.2d 458 (Fla. 1st DCA 1992), in which the court certified the following question of great public importance:
DOES THE TRIAL COURT HAVE JURISDICTION TO DECIDE AN INSURER'S LIABILITY FOR BAD-FAITH HANDLING OF A CLAIM PRIOR TO FINAL DETERMINATION OF THE UNDERLYING TORT ACTION FOR DAMAGES BROUGHT BY THE INJURED PARTY AGAINST THE INSURED WHERE THE PARTIES STIPULATE THAT THE BAD-FAITH ACTION MAY BE TRIED BEFORE THE UNDERLYING NEGLIGENCE CLAIM?
Id. at 460. We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution.
Kenneth Dale Cunningham and Teresa Marie Cunningham sustained injuries and property damage as a result of an automobile collision with Joseph Grant James. The Cunninghams filed a complaint for damages against James alleging that the accident was caused by James' negligent operation of a motor vehicle. James' automobile insurance policy with Standard Guaranty Insurance Company had a bodily injury liability limit of $10,000 and a property damage liability limit of $10,000. After the action had been pending for several months without settlement, the Cunninghams added Standard Guaranty as a party to the lawsuit alleging that Standard Guaranty had acted in bad faith by failing to settle the claim. Standard Guaranty and the Cunninghams then entered into an agreement to try the bad-faith action before trying the underlying negligence claim. The parties further stipulated that if no bad faith was found, the Cunninghams' claims would be settled for the policy limits, and James would not be exposed to an excess judgment.
A jury found Standard Guaranty guilty of bad faith in handling the claim. Standard Guaranty then filed motions for a directed verdict and for a new trial. At the hearing on these motions, Standard Guaranty made an ore tenus motion to dismiss for lack of subject-matter jurisdiction based upon the recently decided case of Dixie Insurance Co. v. Gaffney, 582 So.2d 64 (Fla. 1st DCA 1991). The trial court denied all of the motions. Standard Guaranty and James then filed an admission of liability on the part of James for causing the accident and moved for the entry of a judgment against Standard Guaranty on the issue of bad faith and liability in order to position Standard Guaranty for an appeal. The court then entered a final judgment finding that Standard Guaranty had acted in bad faith and that James' negligence was the sole legal cause of the Cunninghams' damages. The judgment provided for the issue of damages to be tried at a later date. Relying upon its decision in Dixie and this Court's holding in Fidelity & Casualty Co. v. Cope, 462 So.2d 459 (Fla. 1985), the district court of appeal vacated the judgment on the basis that the trial court had no jurisdiction to determine the bad faith of Standard Guaranty prior to the entry of a judgment against James in excess of the policy limits on the underlying tort claim.
In Dixie, during the pendency of the underlying tort action against its insured, an insurance company sought a declaratory judgment that it was not guilty of bad faith in the handling of its insured's claim. The parties, by stipulation, agreed to stay the negligence action until the declaratory judgment issue was resolved. The trial court held that it lacked jurisdiction because there was no bona fide, actual, present, and practical need for the declaration sought before the underlying tort claim was resolved, and the appellate court affirmed. More recently, the Fifth District Court of Appeal reached a similar conclusion. State Farm Mut. Auto. Ins. Co. v. Marshall, 618 So.2d 1377 (Fla. 5th DCA 1993).
*181 Cope involved a bad-faith action brought by an injured party against an insurance company after the injured party had released the insured tortfeasor from all liability. In that case we acknowledged that the essence of a third-party bad-faith cause of action is to remedy a situation in which an insured is exposed to an excess judgment because of the insurer's failure to properly or promptly defend the claim. Cope, 462 So.2d at 460. We held that when an injured party releases an insured from liability, or when the underlying judgment has been satisfied, a cause of action for bad faith against the insurer no longer exists. Id. at 461. Significantly, however, in that case the underlying claim no longer existed, whereas in the instant case there was a stipulation which preserved the underlying claim.
We acknowledge that the parties cannot stipulate to jurisdiction over the subject matter where none exists, see, e.g., Lovett v. Lovett, 93 Fla. 611, 112 So. 768 (1927), and that the defense of subject-matter jurisdiction can be raised at any time. Fla. R.Civ.P. 1.140(h)(2). However, we cannot accept the proposition that the trial court in the instant case lacked subject-matter jurisdiction. Although an excess judgment is an element of a bad-faith claim, we agree with Judge Wolf who stated in his concurring opinion, "I do not believe that the failure to allege and prove this element rises to the level of a jurisdictional defect which cannot be waived." Standard Guaranty, 610 So.2d at 460 (Wolf, J., concurring).
In Lovett, this Court explained that subject-matter jurisdiction concerns the power of the trial court to deal with a class of cases to which a particular case belongs. Stated differently:
"Jurisdiction," in the strict meaning of the term, as applied to judicial officers and tribunals, means no more than the power lawfully existing to hear and determine a cause. It is the power lawfully conferred to deal with the general subject involved in the action. It does not depend upon the ultimate existence of a good cause of action in the plaintiff, in the particular case before the court. "It is the power to adjudge concerning the general question involved, and is not dependent upon the state of facts which may appear in a particular case." Hunt v. Hunt, 72 N.Y. 217.
Malone v. Meres, 91 Fla. 709, 725, 109 So. 677, 683 (1926) (citation omitted).
In Florida Power & Light Co. v. Canal Authority, 423 So.2d 421 (Fla. 5th DCA 1982), review denied, 434 So.2d 887 (Fla. 1983), Florida Power filed a motion in 1981 to vacate judgments of condemnation entered in 1967 on the ground that the petitions upon which the judgments were based did not include the authorizing resolutions of the condemning authority as required by a subsequently decided decision of our Court. Florida Power asserted that the trial court which entered the judgments lacked subject-matter jurisdiction. While agreeing that the resolution should have been attached, the district court of appeal affirmed the judgment entered against Florida Power and stated:
Even if at the time the petitions for condemnation in this case were filed the failure of the condemning authority to attach resolutions to their petitions for condemnation made those petitions subject to motions to dismiss, such deficiencies in the pleading invoking the jurisdiction of the trial court did not deprive the court of jurisdiction. Clearly the trial court in the instant cases, being the circuit court, had subject-matter jurisdiction over the class of cases known as condemnation suits.
Florida Power, 423 So.2d at 425 (footnotes omitted). Likewise, the circuit court in the instant case had subject-matter jurisdiction over bad-faith claims against insurance companies.
Under ordinary circumstances, a third party must obtain a judgment against the insured in excess of the policy limits before prosecuting a bad-faith claim against the insured's liability carrier. See Blanchard v. State Farm Mut. Auto. Ins., 575 So.2d 1289 (Fla. 1991) (announcing analogous rule to that of a first-party bad-faith claim). However, even if a complaint were filed asserting a bad-faith claim against a liability insurance company without alleging the existence of a judgment against the insured in *182 excess of the policy limits, the most that could be said would be that the complaint failed to state a cause of action. While the complaint in the instant case did not allege an excess judgment, the stipulation between the parties dispensed with the necessity of that requirement. The stipulation was the functional equivalent of an excess judgment for purposes of satisfying the principle of Cope.
This Court has looked with favor upon stipulations designed to simplify, shorten, or settle litigation and save costs to parties. Such stipulations should be enforced if entered into with good faith and not obtained by fraud, misrepresentation, or mistake, and not against public policy. See Gunn Plumbing, Inc. v. Dania Bank, 252 So.2d 1 (Fla. 1971); Steele v. A.D.H. Bldg. Contractors, Inc., 174 So.2d 16 (Fla. 1965); Welch v. Gray Moss Bondholders Corp., 128 Fla. 722, 175 So. 529 (1937); Esch v. Forster, 123 Fla. 905, 168 So. 229 (1936); Smith v. Smith, 90 Fla. 824, 107 So. 257 (1925). In an arrangement such as the one in the instant case, trying the bad-faith claim before the underlying negligence action would result in a full release of the insured if no bad faith were found, thereby avoiding a time consuming and expensive trial on negligence and damages. We see no reason why the stipulation should not have been recognized.
Accordingly, we answer the certified question in the affirmative and disapprove of the decisions in Dixie and Marshall to the extent that they are inconsistent with this opinion. We quash the decision below and remand for further proceedings consistent with this opinion.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, KOGAN and HARDING, JJ., concur.