731 So.2d 1258 (1999)
UNITED SERVICES AUTOMOBILE ASSOCIATION, Petitioner,
v.
Dale E. JENNINGS, Jr. and Tammy M. Jennings, Respondents.
No. 92,776.
Supreme Court of Florida.
March 25, 1999.
Robert C. Gobelman and Evan G. Frayman of Gobelman and Love, Jacksonville, Florida, for Petitioner.
Thomas S. Edwards, Jr. and Joel B. Toomey of Peek, Cobb, Edwards & Ashton, P.A., Jacksonville, Florida, for Respondents.
Stephen E. Day and Rhonda B. Boggess of Taylor, Day, Currie & Burnett, Jacksonville, Florida, for State Farm Mutual Automobile Insurance Company, Amicus Curiae.
George A. Vaka and Tracy Raffles of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Tampa, Florida, for Florida Defense Lawyers' Association, Amicus Curiae.
Louis K. Rosenbloum, Pensacola, Florida, for Academy of Florida Trial Lawyers, Amicus Curiae.
WELLS, J.
We review United Services Automobile Ass'n v. Jennings, 707 So.2d 384 (Fla. 1st DCA 1998), in which the district court certified the following question as being of great public importance:
WHETHER THE FACT THAT A THIRD PARTY BAD-FAITH CLAIM HAS BEEN BROUGHT PURSUANT TO A CUNNINGHAM[1] STIPULATION RATHER THAN PURSUANT TO AN EXCESS JUDGMENT MAKES ANY DIFFERENCE WHEN ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGES ARE ASSERTED DURING DISCOVERY IN THE BAD-FAITH ACTION AS TO MATERIAL CONTAINED IN THE CLAIMS FILE?
Jennings, 707 So.2d at 385 (footnote added). We have jurisdiction. Art. V, *1259 § 3(b)(4), Fla. Const. We answer the certified question in the negative and approve the decision of the district court.
In December 1993, Christopher Broxton, the 16-year-old son of petitioner's insured, Bobby Broxton, was the driver of an insured vehicle that collided head-on with a car driven by respondent Dale Jennings. As a result of the accident, Christopher Broxton died and respondent was seriously injured. Respondents initiated settlement negotiations with petitioner. Negotiations broke down in May 1994, and respondents sued petitioner's insured. In November 1994, respondents and petitioner's insured executed a settlement agreement that released all of respondents' claims against petitioner's insured in exchange for the right to pursue a third-party bad-faith claim against petitioner. On July 18, 1995, respondents, petitioner, and petitioner's insured executed a stipulation and agreement. "The stipulation specifically stated that it would `serve as the functional equivalent of an excess judgment in the amount of $75,000,' in accordance with the Florida Supreme Court's opinion in Cunningham v. Standard Guaranty Ins. Co., 630 So.2d 179 (Fla.1994)."[2]Jennings, 707 So.2d at 384. In Cunningham, the purpose of finding a stipulation to be the functional equivalent of an excess judgment was to allow a bad-faith claim to be filed against an insurer that would not fail to state a cause of action because there was no allegation of an excess judgment against an insured. Cunningham, 630 So.2d at 181-82. This Court found that "trying the bad-faith claim before the underlying negligence action would result in a full release of the insured if no bad faith were found, thereby avoiding a time consuming and expensive trial on negligence and damages." Id. at 182. Respondents filed a statutory[3] and common-law third-party bad-faith action against petitioner. When respondents sought discovery of petitioner's claims file related to the collision, petitioner objected on grounds that the requested material was protected by attorney-client and work-product privileges. Over petitioner's objection, the trial court compelled production of the entire claims file.
Petitioner asked the First District Court of Appeal to quash the trial court's discovery order compelling production of the claims file. The First District denied the petition, citing Dunn v. National Security Fire & Casualty Co., 631 So.2d 1103, 1109 (Fla. 5th DCA 1993), and Continental Casualty Co. v. Aqua Jet Filter Systems, Inc., 620 So.2d 1141, 1142 (Fla. 3d DCA 1993), for the proposition that a third party in a third-party bad-faith action stands in the shoes of the insured and thus is entitled to discover the insurer's entire claim file for the underlying tort up to the date of an excess judgment, notwithstanding objections based on attorney-client or work-product privileges. Jennings, 707 So.2d at 385. The First District went on to state that it saw no reason why a case involving a Cunningham stipulation should be treated differently from an excess judgment but certified the question to this Court. Id.
In urging us to answer the certified question in the affirmative and thus to prohibit discovery of the claims file, petitioner contends that an injured third party does not, for discovery purposes, stand in *1260 the shoes of the insured in a third-party bad-faith claim pursuant to a Cunningham stipulation agreement. According to petitioner, this assertion is well-founded because this Court approved in Cunningham a stipulation that was "the functional equivalent of an excess judgment for purposes of satisfying the principle of Cope."[4]Cunningham, 630 So.2d at 182. Petitioner views our citation to Cope as limiting the "functional equivalent" language in Cunningham to a jurisdictional determination, thereby excluding discovery issues. Petitioner concludes that, because this Cunningham agreement does not address discovery, allowing respondents to stand in the shoes of petitioner's insured for discovery purposes would nullify the agreement. We disagree.
Petitioner affords to our Cunningham decision too narrow a reading and then seeks to avoid the plain language of the stipulation to which it agreed. In Cunningham, we simply approved a procedure in which the parties could avoid the time and expense of going through a trial to obtain a final judgment. In following that procedure, the parties agree and the courts recognize that a stipulated final judgment has the same force and effect as a final judgment reached through the usual judicial labor of a trial when the parties agree that it shall.
This is precisely what occurred here. The stipulation expressly states that it serves "as the functional equivalent of an excess judgment." The parties agreed to no conditions or limitations on the force and effect of the judgment. We hold that a judgment so stipulated is to be given the same effect in the bad-faith litigation as a final judgment reached upon a determination at trial, and this includes discovery.
By this holding we do not restrict the terms that the parties to such a stipulation may put into their agreement. The parties may expressly limit discovery. However, the parties did not do so in Cunningham or in this case.
Finally, we note that the permitted discovery of the insurer's claim file is limited to materials related to the insurer's handling of the claim through the date of the stipulation and agreement that concluded the underlying negligence claim and is the basis of the stipulated judgment. The required discovery does not include any attorney-client communication or work-product material which pertains to the insurer's defense of itself in the bad-faith action and which was generated subsequent to the stipulation and agreement, even though such privileged materials are physically included in what is referred to as the claims file.
Accordingly, having answered the certified question in the negative, we approve the district court's decision and remand to the district court for further proceedings in conformity with this opinion. We remand respondents' claim for attorney fees for a determination of entitlement if respondents ultimately prevail in the bad-faith action.
It is so ordered.
HARDING, C.J., SHAW, ANSTEAD and PARIENTE, JJ., and OVERTON, Senior Justice, concur.
NOTES
[1] Cunningham v. Standard Guaranty Ins. Co., 630 So.2d 179 (Fla. 1994).
[2] An excess judgment is defined as the difference between all available insurance coverage and the amount of the verdict recovered by the injured party. McLeod v. Continental Ins. Co., 591 So.2d 621 (Fla. 1992).
[3] Section 624.155(1)(b)1, Florida Statutes (1993), reads in pertinent part:

(1) Any person may bring a civil action against an insurer when such person is damaged:
. . . .
(b) By the commission of any of the following acts by the insurer:
1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interests;....
[4] Fidelity & Casualty Co. v. Cope, 462 So.2d 459 (Fla. 1985).