[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12067

_____

D.C. Docket No. 6:16-cv-02240-JA-GJK

DAVID MADISON CAWTHORN,

Plaintiff-Appellant,

versus

AUTO-OWNERS INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 25, 2019)

Before TJOFLAT, MARTIN, and PARKER,[*] Circuit Judges.

TJOFLAT, Circuit Judge:

_____

[*] Honorable Barrington Daniels Parker Jr., United States Circuit Judge for the Second Circuit, sitting by designation.

David Madison Cawthorn appeals the District Court's grant of summary judgment in favor of Auto-Owners Insurance Company on his assigned third-party bad faith insurance claim.  After reviewing the record, and with the benefit of oral argument, we affirm the District Court because Cawthorn cannot show that the insured in this case was exposed to an excess judgment—an essential element of the claim.

I.

David Madison Cawthorn and Bradley Ledford were traveling together from Florida to North Carolina on April 3, 2014.  Ledford was driving a vehicle owned by his father's business, Bob Ledford's RV & Marine, Inc. ("Bob's RV").  While his friend drove, Cawthorn slept in the passenger seat.  Ledford fell asleep at the wheel and crashed into a concrete barrier.  He sustained no injuries, but Cawthorn, whose feet were on the dashboard, sustained serious injuries resulting in paralysis from the waist down.

Serious injuries bring serious medical bills, so the parties had to think about liability and insurance coverage.  At the time of the accident, Bob's RV was insured through Auto-Owners Insurance Company ("Auto-Owners").  Bob's RV was covered by two Auto-Owners policies: a $1 million Garage Liability Policy and a $2 million Commercial Umbrella Policy, for $3 million of total coverage.  Ledford was a scheduled driver under the Garage Liability Policy.

2

First, we describe the communications that transpired between Auto-Owners, the Ledfords, and the Cawthorns preceding this litigation. The District Court's order sets forth an extensive description of the pre-litigation communications. There is no need to repeat the information here beyond a brief summary.

Auto-Owners learned about the car accident on April 4, 2014. A Florida adjuster, Pamela McLean, was assigned to handle the claim. McLean gathered information about the accident throughout April, such as the details of the accident and Cawthorn's injuries, and determined that the insured, Ledford, was at fault. At the end of the month, McLean opened a reserve for $3 million, the policies' combined limits.

Between April and June, McLean sought Cawthorn's medical records, which she needed to process his claim. She requested an authorization release form from Cawthorn. Cawthorn's father ("Cawthorn Sr.") signed and submitted the form on behalf of his son. But because Cawthorn was an adult, Halifax Hospital, where Cawthorn had been treated, would not accept a form signed by a parent. McLean reached out again to the Cawthorns but they did not produce the signed form.

On June 11, Cawthorn Sr. called McLean. The parties offer different accounts of the conversation. According to McLean, she merely reminded Cawthorn Sr. that she still needed the medical authorization form. Contrarily,

3

Cawthorn Sr. says McLean refused to tell him how much money he would receive and advised him not to hire a lawyer.

Soon after the June 11 call, McLean emailed Cawthorn Sr. a blank medical authorization form. Cawthorn Sr. responded, asking how much money his son would receive. McLean explained the $3 million policy limits.

According to Cawthorn, he would have accepted $3 million before June 11. But because of the June 11 phone call, the Cawthorns distrusted Auto-Owners and decided they would no longer be willing to settle. So Cawthorn hired a lawyer, Joseph Kalbac.

That brings us to the present litigation. Cawthorn sued Ledford and Bob's RV for negligence in Florida state court. On July 14, 2014, Auto-Owners learned of the lawsuit. It hired attorneys to represent Ledford and Bob's RV.

On August 7, McLean tendered two checks to Kalbac, totaling $3 million. Auto-Owners still had not received Cawthorn's medical records but had received a notice of a lien from Cawthorn's health insurance company, which constituted enough to process the claim. Kalbac returned the checks, rejecting the tender.

In 2016, after an unsuccessful attempt at mediation, Kalbac sent out a proposed settlement agreement to Ledford and Bob's RV. The agreement required tender by Auto-Owners of the $3 million policy limits to settle claims against Bob's RV, a $33 million consent judgment against Ledford, and Cawthorn's

4

covenant not to execute the judgment against Ledford. There were signature lines for Ledford, Bob's RV, Cawthorn, and Auto-Owners.

McLean (on behalf of Auto-Owners) responded to the proposal: "[W]e continue to be willing to pay Mr. Cawthorn the full $3 million . . . while continuing to provide a defense to Mr. Ledford . . . . As for a future consent judgement [sic] against [Ledford], that will be solely up to [Cawthorn], you and [Ledford's counsel]."

So Cawthorn and Ledford continued the settlement discussions without Auto-Owners. On October 20, 2016, they executed the final agreement. There was no signature line for Auto-Owners on the final agreement, and there is no evidence that Auto-Owners saw the agreement. Under the terms of the agreement, Auto-Owners would tender $3 million to Cawthorn for a full release of Bob's RV. Ledford also agreed to a $30 million consent judgment against him, and Ledford assigned to Cawthorn his rights to sue Auto-Owners for its conduct during the insurance claim. Finally, Cawthorn agreed not to record the consent judgment against Ledford and to deliver to Ledford a full and complete satisfaction of the consent judgment, regardless of the outcome of the future bad faith claim.

Auto-Owners tendered $3 million to Cawthorn and Cawthorn accepted. Cawthorn then filed this bad faith suit in December 2016, under assignment of Ledford's rights, seeking $30 million. The theory of Cawthorn's case is that Auto-

Owners acted in bad faith when handling Cawthorn's insurance claim, and but for the bad faith, Cawthorn would have settled for the $3 million policy limits. Auto-Owners moved for summary judgment.

Two issues were before the District Court: (1) whether Cawthorn could prosecute the bad faith claim against Auto-Owners without first obtaining an excess judgment or its functional equivalent, and (2) whether Auto-Owners acted in bad faith as a matter of law. The District Court answered the first question in the negative, did not reach the second question, and granted summary judgment in favor of Auto-Owners. The instant appeal followed.

## II.

We review a district court's grant of summary judgment *de novo*, viewing all evidence in the light most favorable to the non-moving party. *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a diversity action such as this, we apply state substantive law and federal procedural law. *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011). We apply the substantive law of the forum state, so here we look to Florida law. *Id.*

6

III.

Bad faith claims arise when a party incurs liability that is covered by his insurance policy, but due to the alleged bad faith of his insurance company, the liability is higher than the policy limits. These claims are rooted in the same logic as negligence claims, although some states (like Florida) impose a heightened duty of care. In a bad faith claim, a plaintiff must show that (1) the insurer owed the insured a duty, (2) the insurer breached its duty, (3) and the breach caused the insured to suffer (4) an injury. *See Bos. Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980) (per curiam).

Duty is straightforward. Florida law imposes a duty of good faith. *Fla. Farm Bureau Mut. Ins. Co., v. Rice*, 393 So. 2d 552, 555 (Fla. 1st Dist. Ct. App. 2010). Insurance companies must "settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Bos. Old Colony Ins. Co.*, 386 So. 2d at 785. The insurer must also "defend its insured." *Coblentz v. Am. Sur. Co. of N.Y.*, 416 F.2d 1059, 1062 (5th Cir. 1969).

An insurance company breaches its duty when it acts in bad faith—mere negligence is not enough. *Campbell v. Gov't Emps. Ins. Co.*, 306 So. 2d 525, 530 (Fla. 1974) ("[W]e align[] Florida with those states whose standards for determining liability in an excess judgment case is bad faith rather than negligence.").

Causation is proved with an excess judgment, which is a judgment above the insurance policy limits.  Causation is a prerequisite for the claim: for an insured to bring a bad faith claim, the injured party must first win an excess judgment. *Cunningham v. Standard Guar. Ins. Co.*, 630 So. 2d 179, 181–82 (Fla. 1994). We'll call this rule the "excess judgment rule."

The excess judgment rule prevents courts from deciding cases without jurisdiction.  There is not a case or controversy before there is an excess judgment. Until the insured is subjected to an excess judgment, any contention that he will be liable beyond policy limits "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Atlanta Gas & Light Co. v. Fed. Energy Regulation Comm'n*, 140 F.3d 1392, 1404 (11th Cir. 1998); s*ee Dixie Ins. Co. v. Gaffney*, 582 So. 2d 64, 65 (Fla. 1st Dist. Ct. App. 1991); *State Farm Mut. Automobile Ins. Co. v. Marshall*, 618 So. 2d 1377, 1379–80 (Fla. 5th Dist. Ct. App. 1993).

As with all rules, this one has some exceptions.  There are three exceptions, which are deemed "functional equivalents" of an excess judgment under Florida law.  *Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893, 899 (Fla. 2010).  When an exception applies, an insured can show causation based on a stipulation of damages rather than an excess judgment.  *Id.*

The first exception is called a *Cunningham* agreement, wherein the insurance company and the injured third party agree to try the bad faith claim first, and, if the jury finds no bad faith, the parties agree to settle for policy limits. *Cunningham*, 630 So. 2d at 182. The second exception is called a *Coblentz* agreement. *Coblentz* agreements arise when the insurance company fails to defend the insured and, in response, the insured and the injured third party agree to settle the suit and allow the injured third party to sue the insurance company on a theory of bad faith. *Coblentz*, 416 F.2d at 1063; *Steil v. Fla. Physicians' Ins. Reciprocal*, 448 So. 2d 589, 591 (Fla. 2d Dist. Ct. App. 1984). The third exception occurs when an excess carrier incurs damages because the primary carrier acted in bad faith. In such cases, an excess carrier may bring a bad faith claim against a primary insurer "by virtue of equitable subrogation." *Perera*, 35 So. 3d at 900.

If a plaintiff can show breach and causation, he can show injury. The amount of liability that exceeds the policy limits is the injury. *United Servs. Auto Ass'n v. Jennings*, 731 So. 2d 1258, 1259 n.2 (Fla. 1999).

IV.

A.

This case turns on causation, which means it turns on whether the Cawthorn-Ledford consent judgment constitutes an excess judgment or a functional equivalent.

9

We will start with the exceptions to the excess judgment rule because we can make quick work of them. None of the exceptions apply here. Cawthorn's claim is not a *Cunningham* agreement because, unlike in *Cunningham*, the insurer, Auto-Owners, was not a party to the consent judgment. Cawthorn's claim is not a *Coblentz* agreement because Auto-Owners did not neglect its duty to defend. Finally, this claim clearly does not fall into the third exception: this is not a case of an excess carrier suing a primary carrier.

Instead of pointing to an exception, Cawthorn argues that the consent judgment *is* an excess judgment. The District Court did not see it that way, and our interpretation of Florida law aligns with the District Court's.

The question turns on our interpretation of the word "judgment" in this context. A judgment is a final decision—a verdict—reached by a factfinder.[1] A judgment is an *excess* judgment when the amount of the verdict recovered by the injured party is greater than all the available insurance coverage. *Jennings*, 731

---

[1] Florida courts have used "judgment" and "verdict" interchangeably when discussing excess judgments. *E.g.*, *Jennings*, 731 So. 2d at 1259 n.2 ("An excess judgment is . . . the difference between all available insurance coverage and the amount of the *verdict* . . . ." (emphasis added)). A verdict is "[a] jury's finding or decision on the factual issues of a case." *Verdict*, Black's Law Dictionary (11th ed. 2019).

Furthermore, if a consent judgment did constitute a judgment here, then Florida courts would not have been so precise when carving out the narrow exceptions in *Cunningham* and *Coblentz*. Plaintiffs would not need to get insurance companies to agree to try a bad faith case pre–excess judgment, as in *Cunningham*, nor would it matter whether the insurer failed to defend the insured, as in *Coblentz*. That Florida courts carved out such specific functional equivalents, rather than merely deeming all consent judgments sufficient, demonstrates that Florida courts construe "judgment" as narrowly as we do in this context.

So. 2d at 1259 n.2.  A consent judgment, on the other hand, is akin to a private contract, one that it is simply acknowledged and recorded by a court.

If we were to adopt Cawthorn's argument that a consent judgment is a judgment, we would be carving out a fourth exception to the excess judgment rule. Cawthorn disagrees.  Cawthorn points to Florida case law to support the proposition that courts have treated final verdicts and consent judgments as indistinguishable in third-party bad faith claims.  But the authority he cites is not convincing.  For example, he points to *Barnard v. Geico Gen. Ins. Co.*, 448 F. App'x 940 (11th Cir. 2011) (per curiam) (unpublished opinion); *Padilla v. Travelers Home & Marine Ins. Co.*, No. 6:14-cv-1700 (M.D. Fla. May 29, 2015); and *Gutierrez v. Yochim*, 23 So. 3d 1221 (Fla. 2nd Dist. Ct. App. 2009).  Although these cases involve consent judgments, only *Gutierrez* mentions whether the defendant–insurance company was a party to the consent judgment.  And the defendant–insurance company in that case *was* a party to the consent judgment, making the case inapposite.  *Gutierrez*, 23 So. 3d at 1224.  Furthermore, none of the cases mention whether the insurance companies were bound by the consent judgments.

Had those cases been analogous to this one, the courts would have paid closer attention to the facts surrounding the consent judgments, as well as the consequences of deciding that a consent judgment constitutes an excess judgment

11

for the purposes of a third-party bad faith claim.  Florida law protects insurance companies with the excess judgment rule.  If consent judgments were enough to show causation, that protection would be eliminated.  Insurers would not know whether an insured party and an injured party entered into a consent judgment as adversaries, at arm's length and in good faith, or as friends, making a strategic decision to undermine the insurance company's policy.  Surely no court would eviscerate the well-established safeguards without paying any attention to the gravity of the decision.

### B.

Auto-Owners argues on appeal that this Court should decide whether, as a matter of law, Auto-Owners acted in bad faith.  The District Court did not reach this issue because there was no excess judgment or functional equivalent, meaning no case or controversy.  The District Court was correct to not reach the issue. *Cunningham*, 630 So. 2d at 181 ("[A] third party must obtain a judgment against the insured in excess of the policy limits before prosecuting a bad-faith claim against the insured's liability carrier.").

**AFFIRMED.**