# Supreme Court of Florida

---

No. SC20-1419

---

**STATE OF FLORIDA,**
Petitioner,

vs.

**JOHNATHAN DAVID GARCIA,**
Respondent.

October 27, 2022

COURIEL, J.

We took this case to answer questions posed by the Fifth District Court of Appeal[1] about whether requiring a defendant to disclose the passcode to an encrypted smartphone violates his constitutional right not to "be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.

After considering the parties' briefs and oral arguments, we conclude that we must answer a different question first: whether the court properly granted certiorari below, in *Garcia v. State*, 302

---

1. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.

So. 3d 1051 (Fla. 5th DCA 2020). *See Polk Cnty. v. Sofka*, 702 So. 2d 1243, 1245 (Fla. 1997) (declining to address the certified question because "the limits of a court's jurisdiction are of 'primary concern,' requiring the court to address the issue 'sua sponte when any doubt exists'" (quoting *Mapoles v. Wilson*, 122 So. 2d 249, 251 (Fla. 1st DCA 1960))).

We find that it did not. The order before the Fifth District did not cause Garcia irreparable harm—that is, a material injury that could not be corrected on postjudgment appeal. The district court therefore did not have certiorari jurisdiction. Furthermore, even if jurisdiction had been established, it could not be shown that the circuit court violated a clearly established principle of law. So we quash the Fifth District's decision to grant the writ and remand for further proceedings consistent with our decision.

# I

On March 8, 2018, someone shattered Terrell Collins's bedroom window. Police investigating the crime scene found a Samsung smartphone nearby. Collins's girlfriend, Ana Diaz, speculated that the culprit was her ex-boyfriend, Johnathan Garcia, who she believed was following her. At the police's request, Diaz

- 2 -

called the phone number she had saved in her phone as Garcia's, and the smartphone began to ring. It displayed Diaz's name and phone number.

About a month later, on April 17, Diaz called police back to Collins's home to show them a GPS tracker she had discovered on her car. The police researched the tracker and learned it could be traced by a smartphone application. The police submitted the tracker into evidence under the case number used for Collins's shattered window.

The State charged Garcia with aggravated stalking with a credible threat, in violation of section 784.048(3), Florida Statutes (2018), and with throwing a deadly missile into a building, in violation of section 790.19, Florida Statutes. On January 4, 2019,[2] the State obtained a search warrant to search the smartphone for

2. Our record in this case does not explain the approximately eight-month delay between the authorities' seizure of the smartphone and their application for a search warrant.

- 3 -

evidence related to Garcia's charges.  The smartphone, however, was passcode protected.[3]

The State filed a motion to compel Garcia to disclose the smartphone's passcode.  Declining to concede ownership of the smartphone, Garcia argued that such compelled disclosure would violate his Fifth Amendment privilege against self-incrimination. The trial court granted the State's motion.

---

3.  A smartphone passcode prevents unintended users from accessing a smartphone's contents by encrypting them.  Encrypting a smartphone's contents "translates the data into a format that is unintelligible until it is translated back into its original form through use of a decoding mechanism," or passcode.  *Lawful Access*, U.S. Dep't of Just., (last updated Oct. 30, 2020), https://perma.cc/6VJV-2UMH.  "Entering the password decrypts the [data on the] device, and decryption permits a user to manipulate the files the device contains."  Orin S. Kerr, *Decryption Originalism: The Lessons of* Burr, 134 Harv. L. Rev. 905, 958 (2021).

"Service providers, device manufacturers, and application developers . . . deploy[] products and services with encryption that can only be decrypted by the end user or customer."  *Lawful Access*.  This means that the end user or smartphone owner may have sole knowledge of the passcode, or sole biometric access— using a fingerprint or facial recognition—to the smartphone, so without the owner's permission, its contents are "warrant-proof." *Id.*  Decryption software needed to bypass a smartphone passcode is not universally available; the record before us is silent as to whether the authorities in this case have access to it.

Garcia then filed a petition for writ of certiorari in the Fifth District, contesting the trial court's order to compel. The Fifth District granted the writ and quashed the trial court's order to compel, without discussing whether Garcia had demonstrated that the order would cause him irreparable harm.

The State sought discretionary review in this Court.

**II**

Although it did not do so below, the State raises subject-matter jurisdiction here, contending that the Fifth District should have denied the writ under our cases governing its narrow scope and intended use. *See Cunningham v. Standard Guar. Ins.*, 630 So. 2d 179, 181 (Fla. 1994) ("[T]he defense of subject-matter jurisdiction can be raised at any time." (citing Fla. R. Civ. P. 1.140(h)(2))).

A writ of certiorari to correct a nonfinal order is indeed "an extraordinary remedy." *Martin-Johnson, Inc. v. Savage*, 509 So. 2d 1097, 1098 (Fla. 1987). In the normal course of proceedings, Florida law authorizes interlocutory appeals from only a few types of

nonfinal orders. *Id.* at 1098 n.2 (citing Fla. R. App. P. 9.130).[4]

Otherwise, appellate review is generally "postponed until the matter is concluded in the trial court" and addressed in a final order. *Id.* at 1098; *see also* Fla. R. App. P. 9.130 (Committee Notes, 1977 Amendments) ("[I]t is extremely rare that erroneous interlocutory rulings can be corrected by resort to common law certiorari. . . . [B]ecause the most urgent interlocutory orders are appealable under this rule, there will be very few cases in which common law certiorari will provide relief.").

---

4.  Florida Rule of Appellate Procedure 9.130 authorizes appeals only for specific types of nonfinal orders.  For example:

> (3) Appeals to the district courts of appeal of nonfinal orders are limited to those that:
> (A) concern venue;
> (B) grant, continue, modify, deny, or dissolve injunctions, or refuse to modify or dissolve injunctions;
> (C) determine:
>> (i) the jurisdiction of the person;
>> (ii) the right to immediate possession of property, including but not limited to orders that grant, modify, dissolve, or refuse to grant, modify, or dissolve writs of replevin, garnishment, or attachment;
> . . . .

Fla. R. App. P. 9.130.

For a district court to grant a writ of certiorari, the petitioner must "demonstrate that the contested order constitutes '(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case[,] (3) that cannot be corrected on postjudgment appeal.' " *Bd. of Trs. of Internal Improvement Tr. Fund v. Am. Educ. Enters.,* 99 So. 3d 450, 454 (Fla. 2012) (quoting *Reeves v. Fleetwood Homes of Fla., Inc.,* 889 So. 2d 812, 822 (Fla. 2004)). Courts consider in tandem whether the contested order would cause the petitioner material injury and whether the petitioner has an adequate remedy on appeal, referring to the combined question as whether the petitioner would suffer "irreparable harm." *See Citizens Prop. Ins. Corp. v. San Perdido Ass'n,* 104 So. 3d 344, 351 (Fla. 2012) (explaining that the threshold inquiry is whether there exists "a material injury that cannot be corrected on appeal, otherwise termed as irreparable harm"). And we address the irreparable harm question prior to determining whether the contested order departed from the essential requirements of the law. *See Williams v. Oken,* 62 So. 3d 1129, 1132-33 (Fla. 2011) ("The last two elements [which constitute irreparable harm] are jurisdictional and must be analyzed before

the court may even consider . . . whether the trial court departed from the essential requirements of the law.").

Here, the trial court's order compelling Garcia to produce the smartphone's passcode may very well materially injure his defense at trial. If Garcia knows and discloses the smartphone's passcode, leaving aside the smartphone's contents, he would be providing evidence to support the conclusion that he owns the smartphone. And that evidence would be corroborated by the fact that the smartphone rings when his ex-girlfriend calls his number. Further, by giving evidence to support his ownership of a smartphone found at the crime scene, Garcia's disclosure of the passcode would also tend to prove that he was there at some point—likely at the time of the crime, given that the phone was still charged enough to function when it was discovered.

We find, however, that Garcia could adequately remedy these potential, admittedly material, injuries on postjudgment appeal of a final order. *See State v. Pettis*, 520 So. 2d 250, 253 n.2 (Fla. 1988). On the record before us now, we cannot know what use of the smartphone evidence the State will ultimately propose to make, whether such evidence will be admitted by the trial court, or how

any such use would be rebutted by Garcia. These considerations would shape the questions of law a court would consider on appellate review. It is for precisely this reason that "[g]enerally, parties must wait until after a final order is issued before seeking appellate review." *Rodriguez v. Miami-Dade Cnty.*, 117 So. 3d 400, 404 (Fla. 2013); *see also Jaye v. Royal Saxon, Inc.*, 720 So. 2d 214, 215 (Fla. 1998) ("The judicial policy in favor of limited certiorari review is based on the notion that piecemeal review of nonfinal trial court orders will impede the orderly administration of justice and serve only to delay and harass."); *Martin-Johnson, Inc.*, 509 So. 2d at 1098 ("[C]ommon law certiorari is an extraordinary remedy and should not be used to circumvent the interlocutory appeal rule which authorizes appeal from only a few types of non-final orders."). In the absence of irreparable harm incapable of remedy on postjudgment appeal, the district court had no jurisdiction to issue a writ of certiorari.

While that conclusion decides this case, we cannot say the trial order constitutes a departure from the essential requirements of the law—another requirement for a grant of certiorari. *See Combs v. State*, 436 So. 2d 93, 96 (Fla. 1983) (stating that district

courts should find that there is a departure from the essential requirements of the law "*only when there has been a violation of a clearly established principle of law* resulting in a miscarriage of justice" (emphasis added)).

To the contrary, as the parties demonstrate in their briefing, this case may, if and when properly before us, pose questions we have not previously answered regarding the scope of the Fifth Amendment privilege against self-incrimination, or for which there was no clearly established law binding on the trial court. Petitioner's Initial Brief on the Merits at 27-28 (citing *Doe v. United States*, 487 U.S. 201, 215 (1988) to support its argument that passcode disclosure is not a "testimonial" communication and therefore is not protected by the Fifth Amendment); Petitioner's Reply Brief on the Merits at 4 (citing *Kastigar v. United States*, 406 U.S. 441, 443-48 (1972), and *United States v. Gecas*, 120 F.3d 1419, 1428-29 (11th Cir. 1997), for the proposition that a criminal defendant may not invoke the Fifth Amendment before trial because the Fifth Amendment only protects a defendant during a "criminal case"); Brief of *Amici Curiae* American Civil Liberties Union, Electronic Frontier Foundation, and National Association of

Criminal Defense Lawyers at 14 (citing *United States v. Hubbell*, 530 U.S. 27, 44-45 (2000), to demonstrate that Garcia's passcode is not a "foregone conclusion" unprotected by the Fifth Amendment). The district courts of appeal have reasoned to differing conclusions about whether disclosure of a smartphone passcode is testimonial.[5] The courts of last resort in several states have disagreed about whether the compulsion of such disclosure in circumstances like these would violate a defendant's constitutional right against self-incrimination.[6]

---

5. Prior to the Fifth District's decision, Florida's Fourth District and Second District Courts of Appeal had directly addressed the question and reached opposite conclusions. In *State v. Stahl*, 206 So. 3d 124 (Fla. 2d DCA 2016), the Second District held the Fifth Amendment did not protect a defendant from compelled disclosure of his smartphone's passcode and suggested that such disclosure would not be testimonial. But in *G.A.Q.L. v. State*, 257 So. 3d 1058 (Fla. 4th DCA 2018), the Fourth District held the Fifth Amendment did protect a defendant from compelled disclosure of his smartphone's passcode and stated that such disclosure would be testimonial.

6. *Compare State v. Andrews*, 234 A.3d 1254 (N.J. 2020) (holding the Fifth Amendment does not protect against compelled disclosure of a passcode), *and Commonwealth v. Gelfgatt*, 11 N.E.3d 605 (Mass. 2014) (holding the Fifth Amendment does not protect against compelled disclosure of a computer password), *with Seo v. State*, 148 N.E.3d 952 (Ind. 2020) (holding the Fifth Amendment did protect against compelled disclosure of a passcode), *Commonwealth*

Nor have we or the U.S. Supreme Court conclusively addressed the scope of Fifth Amendment protections in a pretrial context such as this.[7] Thus, had Garcia demonstrated irreparable harm and thereby required us to decide whether the order to compel departed from the essential requirements of the law, we would still reject his petition: it remains unsettled whether the Fifth Amendment protects a criminal defendant, subject to a duly-issued warrant, from being compelled to disclose a passcode to a smartphone. We therefore cannot say on this record that the trial court departed from the essential requirements of the law.

---

*v. Davis*, 220 A.3d 534 (Pa. 2019) (holding the Fifth Amendment did protect against compelled disclosure of a computer password), *and State v. Pittman*, 479 P.3d 1028 (Or. 2021) (holding a state constitutional protection against self-incrimination did protect against compelled disclosure of a passcode).

7.  *See Vogt v. City of Hays*, 844 F.3d 1235, 1239 (10th Cir. 2017) ("The U.S. Supreme Court has not conclusively defined the scope of a 'criminal case' under the Fifth Amendment."). The federal circuit courts are split. *Compare Renda v. King*, 347 F.3d 550, 552 (3d Cir. 2003), *Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir. 2005), *and Murray v. Earle*, 405 F.3d 278, 285 (5th Cir. 2005), *with Higazy v. Templeton*, 505 F.3d 161, 171, 173 (2d Cir. 2007), *Best v. City of Portland*, 554 F.3d 698, 702-03 (7th Cir. 2009), *Stoot v. City of Everett*, 582 F.3d 910, 925 (9th Cir. 2009), *and Vogt*, 844 F.3d at 1241.

## III

We quash the Fifth District's decision to grant a writ of certiorari and remand for further proceedings in accordance with this opinion.

It is so ordered.

MUÑIZ, C.J., and CANADY, POLSTON, and LABARGA, JJ., concur.
GROSSHANS, J., recused.
FRANCIS, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal Certified Great Public Importance/Certified Direct Conflict of Decisions

    Fifth District – Case No. 5D19-590

    (Orange County)

Ashley Moody, Attorney General, Henry C. Whitaker, Solicitor General, Jeffrey Paul DeSousa, Chief Deputy Solicitor General, and Christopher J. Baum, Senior Deputy Solicitor General, Tallahassee, Florida,

    for Petitioner

Robert Wesley, Public Defender, Robert Thompson Adams IV, Catherine Conlon, and Marie Taylor, Assistant Public Defenders, Ninth Judicial Circuit, Orlando, Florida,

    for Respondent

Harvey J. Sepler of Alvarez Gonzalez Menezes LLP, Hollywood, Florida,

> for Amici Curiae Independence Institute and Due Process Institute

Jackie Perczek and Jeanelle Gomez of Black Srebnick, Miami, Florida, and Diana L. Johnson, Jacksonville, Florida,

> for Amici Curiae Florida Association of Criminal Defense Lawyers and Professor Laurent Sacharoff

Daniel B. Tilley of American Civil Liberties Union of Florida, Inc., Miami, Florida, and Jo Ann Palchak of The Law Office of Jo Ann Palchak, P.A., Tampa, Florida,

> for Amici Curiae American Civil Liberties Union, Electronic Frontier Foundation, and National Association of Criminal Defense Lawyers